**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
)
GERALD PIERCE,                         )
                                       )
        Plaintiff,                     )
                                       )
v.                                     )        Civil Action
                                       )        No. 07-11305-PBS
MAUREEN A. WALSH, et al.,              )
                                       )
        Defendants.                    )
_____)

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

**Introduction**

Defendants Harry Barnes and Greg Nyman[1] (hereinafter, "defendants") submit the

following memorandum in connection with their motion to dismiss the complaint against them.

As grounds for their motion, and as is set forth more fully below, the defendants state that the

claims against them are barred by the doctrine of qualified immunity.

**Background**

The following facts are alleged in the plaintiff's complaint:[2]

The plaintiff, Gerald Pierce, was granted parole after serving a committed sentence at the

North Central Correctional Institute. Complaint, p. 3.  One of the conditions of the plaintiff's

parole was that he consent to "supervision" for drug and alcohol use; the plaintiff assumed that

this supervision would include drug testing. *Id.*, p.4.  The plaintiff did not know, however, that

the drug testing would be conducted via the "direct observation" method, wherein a person is

---

1  The other defendants initially included in this case were dismissed by an order of this Court
dated November 30, 2007.
2  The defendants do not admit the truth of any of these allegations; they merely recite them for
purposes of providing context and accept them as true *only* for purposes of the motion to dismiss.

watched as he produces his urine sample. *Id.,* pp. 1, 5.

After the plaintiff was paroled to a halfway house, he was informed that he was required to submit to drug testing via the direct observation method. Complaint, pp. 5-8. The plaintiff, who suffers from a condition known as "shy bladder syndrome," requested that an alternative method be used for collecting his urine sample, but his request was denied. *Id.*, pp. 1, 8.

The plaintiff encountered significant physical and emotional difficulty in producing urine samples pursuant to the direct observation collection method. Complaint, pp. 10-15. The plaintiff wrote to defendant Barnes to request that an alternative collection method be used; the request was denied. *Id.,* pp. 15-17. The plaintiff was informed that he would be required to report to the parole office the next week to provide a sample under defendant Barnes's direct supervision. *Id.*, p. 17. The plaintiff became deeply concerned after learning of this requirement. *Id.*, pp. 17. Sometime thereafter, the plaintiff violated the terms of his parole by failing to keep the parole office apprised of his whereabouts. Complaint, p. 21.

The sole allegation made against defendant Nyman is that he failed to meet with the plaintiff and explain to him the details of the drug testing procedure. Complaint, p. 5.

The sole allegation made against defendant Barnes is that he denied the plaintiff's request for an alternate urine sample collection method and required the plaintiff to produce a sample under his observation. Complaint, p. 17.

### **Argument**

The complaint against the defendants should be dismissed as they are immune from lawsuits arising out of their actions in requiring direct observation drug testing of the plaintiff. Qualified immunity protects state officials exercising discretionary authority from civil lawsuits, "insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"The qualified immunity principles developed under § 1983 apply equally to claims under the

[Massachusetts Civil rights Act]." *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 595,

747 N.E.2d 729, 746 (2001) (citation omitted).  The qualified immunity privilege is:

> an entitlement not to stand trial or face the other burdens of litigation. . . . [It] is
> immunity from suit rather than the mere defense to liability; and like an absolute
> immunity, it is effectively lost if a case is erroneously permitted to go to trial.

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original).  Consequently, a court

should rule on a claim of qualified immunity at the outset of a lawsuit.  *Harlow*, 457 U.S. at 818;

*Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (immunity challenge should be decided at beginning

of lawsuit so that a "defendant who rightly claims qualified immunity [need not] engage in

expensive and time-consuming preparation to defend the suit on the merits").

"[T]he requisites of a qualified immunity defense must be considered in proper

sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).  First, the court must ask, "Taken in the

light most favorable to the party asserting the injury, do the facts alleged show the [defendant's]

conduct violated a constitutional right?" *Id.* at 201.  If no constitutional guarantee has been

infringed, the inquiry ends there and the defendant is entitled to qualified immunity.  *Id.*  If,

however, a violation could be found based on a favorable view of the complaint, "the next,

sequential step is to ask whether the right was clearly established." *Id.*  Third, if the complaint

clears that hurdle, the court must decide whether a reasonable person would have known his

conduct infringed a clearly-established constitutional right.  *Id.* at 202.

A defendant is entitled to qualified immunity if the court finds in his favor at even one

step of the analysis set forth above.  *Saucier*, 533 U.S. at 200-201.  Here, however, the analysis

cannot proceed past the first inquiry because the drug testing of the plaintiff did not infringe on a

constitutional right. *See Saucier*, 533 U.S. at 199; *Siegert*, 500 U.S. at 233-234 (defendant is entitled to qualified immunity where the facts alleged cannot "be held to state a claim for denial of a constitutional right"). Indeed, the plaintiff does not suggest that drug testing is unconstitutional, only that the direct observation method is. *See generally,* Complaint.  At the time of the drug testing, the plaintiff had been released from the committed portion of his sentence to supervised release on parole.  Complaint, p. 3.  The Supreme Court has recently held that the Fourth Amendment does not prohibit suspicionless searches of parolees. *Samson v. California*, 547 U.S. 843, 126 S.Ct. 2193, 165 L.Ed.2d 250 (2006).  *See also United States v. Weikert*, 504 F.3d 1, 9-11 (1st Cir. 2007).

Even if this Court were to turn to the second and third prong of the qualified immunity analysis, the plaintiff's claim would still fail.  The plaintiff cannot show that the alleged right to be free from direct observation drug testing was "clearly established." *See Saucier,* 533 U.S. at 201.  The cases which the plaintiff cites in support of his argument that the direct observation method of drug testing is disfavored arise in the context of employment disputes, not testing of parolees. *See Byrne v. Mass. Bay Trans. Auth.*, 196 F.Supp.2d 77, 79-80 (D. Mass. 2002)(employees challenged employer drug screening process); *Hansen v. California Dept. of Corrections*, 920 F.Supp. 1480 (N.D. Cal. 1996)(correctional officer subject to drug testing brought suit against employer).  As it is well established that parolees have a diminished expectation of privacy compared to the general public, cases involving employee rights cannot give rise to a "clearly established" ban on the conduct about which the plaintiff complains. *See Samson*, 126 S. Ct. at 2195 (upholding suspicionless search of parolee because he "did not have an expectation of privacy that society would recognize as legitimate").  Because there is no clearly established right for a parolee to be free from direct observation drug testing, the

defendants are entitled to qualified immunity. *See Crooker v. Metallo*, 5 F.3d 583, 585 (1st Cir. 1993)("a state actor is neither expected to carry a crystal ball nor 'to determine the manner in which the law's grey areas will be clarified and defined.'" (citation omitted)).

Moreover, the plaintiff cannot show that the defendants reasonably should have known that their conduct violated the plaintiff's constitutional rights. *Saucier*, 533 U.S. at 202. As previously noted, the sole conduct imputed to defendant Nyman is that he failed to meet with the plaintiff and explain to him the details of the drug testing process. Complaint, p. 5. The plaintiff cannot show that this conduct violated a constitutional right, much less that defendant Nyman should have known that it did. Likewise, the plaintiff cannot show that defendant Barnes reasonably should have known that his conduct violated a clearly established constitutional right. Defendant Barnes would have had the information that the plaintiff had consented to drug testing as a condition of his parole. *See* Complaint, pp. 4-5 (although the plaintiff did not know that the direct observation method would be used, he did consent to drug testing). *See also* 120 C.M.R. 300.07(2) ("supervision for drugs and alcohol" listed among the special conditions of probation which may be imposed). The plaintiff does not point to any authority which should have led defendant Barnes to know that direct observation drug testing violated the plaintiff's constitutional rights. *See Saucier*, 533 U.S. at 202; *Crooker,* 5 F.3d at 585.

The plaintiff's claim under article 14 of the Massachusetts Declaration of Rights likewise fails. While article 14 provides greater protection than the Fourth Amendment in some contexts, the plaintiff has not provided any persuasive reason why it should do so here. Relying on *Commonwealth v. LaFrance*, 402 Mass. 789 (1988), the plaintiff seeks to argue that article 14 provides greater protection here than the Fourth Amendment did in *Samson*.[3] *LaFrance* is easily

---

3  In *LaFrance*, the SJC held that the government could not search a probationer's home without

distinguishable, as it involved a probationer, not a parolee.  As the Supreme Court recognized in

*Samson*, "parolees have fewer expectations of privacy than probationers, because parole is more

akin to imprisonment than probation is to imprisonment." *Samson*, 126 S. Ct. at 2198.  The cases

of *O'Connor v. Police Commissioner of Boston*, 408 Mass. 324, 557 N.E.2d 1146 (1990) and

*Guiney v. Police Commissioner of Boston*, 411 Mass. 328, 582 N.E.2d 523 (1991) address the

question of searches in the employment context, and thus do not reflect on the plaintiff's

situation as a parolee.  Accordingly, the plaintiff's claims both under federal and state law should

be dismissed under the doctrine of qualified immunity.

<u>**Conclusion**</u>

For the foregoing reasons, defendants Harry Barnes and Greg Nyman respectfully request

that this Court dismiss the complaint against them and enter judgment in their favor.

> Respectfully submitted,
>
> HARRY BARNES and GREG NYMAN,
>
> By their attorney,
>
> MARTHA COAKLEY,
>
>
> /s/ Maura D. McLaughlin
> Maura D. McLaughlin (BBO #634923)
> Assistant Attorney General
> Criminal Bureau
> One Ashburton Place
> Boston, MA 02108
> (617) 727-2200, ext. 2857

Dated: June 12, 2008

---

reasonable suspicion of a probation violation.  *LaFrance*, 402 Mass. at 793 (stating its holding
under both the Fourth Amendment and article 14).

**Certificate of Service**

I, Maura D. McLaughlin, hereby certify that, on June 12, 2008, I caused to be served a true and correct copy of the foregoing document by mailing a copy of the same by first class mail, postage prepaid, and addressed to the plaintiff at the following address: Gerald Pierce, Anchor Inn, P.O. Box 240, North Quincy, Massachusetts 02171.

/s/ Maura D. McLaughlin
Maura D. McLaughlin